**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diane DaSilva, | No. CV 11-00865-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

Diane DaSilva seeks review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her benefits under the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.   Background**

   **A.   Factual Background**

DaSilva was born in September 1957 and has a high school education. She previously worked as an insurance billing processor, an insurance applications clerk, and as a postal data entry clerk. She did not engage in substantial gainful activity during the period from January 2, 2003, her alleged disability onset date, through December 31, 2005, the date she last was insured.

During the period from January 2, 2003, through December 31, 2005, DaSilva had migraine headaches, low back pain, breathing problems, and non-epileptic seizures. In 2006, she was diagnosed with lupus.

### B. Procedural History

On June 15, 2003, DaSilva applied for disability insurance benefits under Title II of the Social Security Act. On October 7, 2003, the State agency made an initial adverse decision on the claim, and DaSilva did not request reconsideration of the determination. On May 1, 2005, DaSilva filed an application for supplemental security income. On July 10, 2007, she filed an application for Title II disability insurance benefits with a protective filing date of April 24, 2006. DaSilva's last date insured was December 31, 2005.

On October 20, 2008, an administrative hearing was held at which DaSilva testified and was represented by counsel. Sandra K. Richter, an impartial vocational expert, also appeared at the hearing. During the hearing, DaSilva's counsel requested that her prior application be reopened and subsequently submitted a post-hearing brief and additional medical records supporting the request. On July 13, 2009, the ALJ issued his decision that DaSilva was not disabled within the meaning of the Social Security Act. He also found that the materials submitted after the hearing did not constitute "new and material" evidence and, under 20 C.F.R. § 404.957(c)(1), denied DaSilva's request to reopen based on *res judicata* because the agency had made the previous determination on the same facts or issues and that previous determination had become final.

On September 10, 2009, DaSilva requested review of the ALJ's hearing decision alleging he erred in applying the treating physician rule and in assessing her credibility. On March 1, 2011, the Appeals Council denied DaSilva's request for review of the ALJ's unfavorable decision, making that decision the final decision of the Commissioner. On April 29, 2011, DaSilva sought judicial review of the decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Standard of Review

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. Five-Step Sequential Evaluation Process

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). If the ALJ determines that the claimant is disabled or not disabled at any step, the ALJ does not continue to the next step. The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If so, the claimant is not

- 3 -

1  disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the
2  claimant has a "severe" medically determinable physical or mental impairment.
3  § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step
4  three, the ALJ considers whether the claimant's impairment or combination of
5  impairments meet or equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R.
6  Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled.
7  *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's
8  residual functional capacity and determines whether the claimant is still capable of
9  performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled
10 and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he
11 determines whether the claimant can perform any other work based on the claimant's
12 residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v).
13 If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

14 **IV.   Analysis**

15 At step one, the ALJ found that DaSilva did not engage in substantial gainful
16 activity during the period from January 2, 2003, the alleged onset date of disability,
17 through December 31, 2005, the last date she was insured. At step two, the ALJ found
18 that DaSilva had the following impairments that were severe when considered in
19 combination: "lupus erythematosus (lupus), COPD, headaches, nausea, degenerative disc
20 disease of the cervical and lumbar spine which caused pain in the neck and lower back,
21 and obesity." At step three, the ALJ found that, through the date she was last insured,
22 DaSilva did not have an impairment or combination of impairments that met or medically
23 equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
24 Stewart does not raise any issues related to the ALJ's determinations at the first three
25 steps of the five-step sequential evaluation process.
26     The ALJ determined that DaSilva, through the date she was last insured:
27
28

- 4 -

had the residual functional capacity to perform sedentary semi-skilled work with a prohibition on crawling, crouching, climbing, squatting, or kneeling, and prohibitions on the use of her lower extremities for pushing or pulling, and on the use of her upper extremities for work above her shoulder level.

At step four, the ALJ determined that, through the last date she was insured, DaSilva was capable of performing her past relevant work as an insurance billing processor, an insurance applications clerk, and/or as a data entry processing clerk at the Post Office.

The ALJ also found that the additional materials submitted on September 13, 2007, do not reflect new and material evidence in support of her request to reopen a prior application. Therefore, DaSilva's prior application was not reopened and the initial determination declared administratively final and binding under the doctrine of *res judicata*.

### A.   Weighing Medical Source Evidence

#### 1.   Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating

1 physician's subjective judgments in addition to his clinical findings and interpretation of
2 test results. *Id.* at 832-33.

3       Further, an examining physician's opinion generally must be given greater weight
4 than that of a non-examining physician. *Id.* at 830. As with a treating physician, there
5 must be clear and convincing reasons for rejecting the uncontradicted opinion of an
6 examining physician, and specific and legitimate reasons, supported by substantial
7 evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at
8 830-31.

9       The opinion of a non-examining physician is not itself substantial evidence that
10 justifies the rejection of the opinion of either a treating physician or an examining
11 physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may
12 also serve as substantial evidence when the opinions are consistent with independent
13 clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that
14 an ALJ may consider when evaluating any medical opinion include "the amount of
15 relevant evidence that supports the opinion and the quality of the explanation provided;
16 the consistency of the medical opinion with the record as a whole; [and] the specialty of
17 the physician providing the opinion." *Orn*, 495 F.3d at 631.

18       Moreover, Social Security Rules expressly require a treating source's opinion on
19 an issue of a claimant's impairment be given controlling weight if it is well-supported by
20 medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent
21 with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a
22 treating source's opinion is not given controlling weight, the weight that it will be given is
23 determined by length of the treatment relationship, frequency of examination, nature and
24 extent of the treatment relationship, relevant evidence supporting the opinion, consistency
25 with the record as a whole, the source's specialization, and other factors. *Id.*

26       Finding that a treating physician's opinion is not entitled to controlling weight
27 does not mean that the opinion should be rejected:

- 6 -

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

### 2. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

DaSilva contends the ALJ erred by ignoring the functional capacity assessments and treatment notes of treating family practice physician Peter Novakovic, M.D. The ALJ's hearing decision does not mention Dr. Novakovic by name; however, most of his medical records included in this record are not relevant to the disability determination. Many are copies of prescriptions and lab orders. A few of the pages indicate test results or treatment notes, which show elevated cholesterol and triglycerides, a normal mammogram, and a normal well woman's exam. His July 8, 2003 initial evaluation states that DaSilva reported ringing in her ears and headaches, but denied blurred vision, double vision, memory loss, and tremors. She reported bilateral lower extremity pains and legs swelling and tingling, but denied back pain, muscle cramps, and joint aches. She reported difficulty swallowing, heartburn, acid reflux, and abdominal cramps. Over the next few visits, Dr. Novakovic referred DaSilva for comprehensive lab studies, to a gynecologist, and to gastrointestinal specialist. The gynecologist diagnosed her with endometriosis and fibroids and recommended a hysterectomy. Dr. Novakovic's notes dated August 27, 2003, indicate that DaSilva complained of significant dizziness on a daily basis, headaches, and chronic back problems, and removal of ear wax was attempted but aborted

- 7 -

due to significant discomfort.  His notes dated September 3, 2003, state that DaSilva returned for irrigation of her ears and was assured there was no infection.  His notes dated September 29, 2003, state that her hysterectomy was completed and uneventful.  DaSilva reported continued low back pain with left radiculopathy, improved reflux, improved abdominal pain, and having made an appointment with a colorectal surgeon regarding hemorrhoids.  DaSilva has not identified any of Dr. Novakovic's records that the ALJ should have referenced except for his residual functional capacity assessments.

Dr. Novakovic completed Medical Assessments of Ability to Do Work-Related Physical Activities dated August 28, 2007, June 19, 2008, and July 17, 2009.  The August 28, 2007 assessment does not indicate that it describes DaSilva's condition after January 2, 2003, and before December 31, 2005.  It includes Dr. Novakovic's opinion that DaSilva cannot perform work 8 hours a day, 5 days a week, on a regular and consistent basis.  No answer was provided to the question asking what DaSilva's impairments were. The assessment indicates that in an 8-hour work day DaSilva can sit more than 1 hour, but less than 2 hours, stand or walk less than 1 hour, lift and carry less than 10 pounds, occasionally reach, and frequently repetitively use both hands.

Dr. Novakovic's June 19, 2008 assessment indicates that the restrictions identified existed before December 31, 2005.  It opines that DaSilva suffers impairments that would prevent her from performing work 8 hours a day, 5 days a week, on a consistent and regular basis.  It identifies the impairments as "mental status changes; complex migraine syndrome; hypoxia; seizures; dizziness; lupus."  The 2008 assessment finds greater functional limitations than the 2007 assessment did.  The 2008 assessment indicates that in an 8-hour work day DaSilva cannot sit more than 1 hour, and she cannot reach or repetitively use either hand at all.

Dr. Novakovic's July 17, 2009 assessment was not provided to the ALJ, but was added to the record before the Appeals Council.  It states the same opinions as the 2008

- 8 -

1 assessment and indicates that the identified restrictions existed before December 31,
2 2005, but adds lung fibrosis and coronary heart disease to the list of impairments.

3       Instead of giving weight to DaSilva's family practice physician, the ALJ gave
4 controlling weight to the diagnoses and opinions of treating neurologist Kirk Puttlitz,
5 M.D.[1] The hearing decision states detailed findings from Dr. Puttlitz's clinical records
6 regarding DaSilva's degenerative disc disease in her lumbar and cervical spine, including
7 headaches. It specifically finds Dr. Puttlitz "is well qualified to diagnose the claimant's
8 impairments and assess her residual functional capacity, but he did not limit the
9 claimant's residual functional capacity in any way." DaSilva contends the ALJ erred in
10 concluding that a treating provider who does not submit an opinion as to the patient's
11 residual functional capacity opines that the patient has no functional limitation. But the
12 ALJ did not say Dr. Puttlitz opined that DaSilva had no functional limitation. He said Dr.
13 Puttlitz found evidence of tenderness in certain locations and decreased sensation in three
14 fingers and diagnosed her with numerous conditions, but did not say she was limited in
15 any way. The ALJ also noted that Dr. Puttlitz observed that DaSilva "appeared to be in
16 no apparent distress" and "was able to ambulate without difficulty."

17       Although the ALJ did not mention Dr. Novakovic specifically, he stated that "no
18 treating or examining source imposed limitations on the claimant's residual functional
19 capacity which prevented her from performing her past relevant work prior to the date she
20 was last insured." DaSilva does not identify any evidence that contradicts this conclusion
21 except for Dr. Novakovic's June 19, 2008 assessment, which indicated that the identified
22 restrictions existed before December 31, 2005. The ALJ may have missed the assertion
23 regarding the relevant time period because it found greater restrictions than did the
24 previous assessment that was not limited to before December 31, 2005, even though the
25 record generally shows DaSilva's alleged symptoms getting worse rather than better. If

---

[1] Dr. Puttlitz's name is misspelled in the administrative hearing decision.

the ALJ misstated the record by failing to specifically discuss Dr. Novakovic's June 19, 2008 assessment, however, it is harmless error. Dr. Novakovic's treatment notes do not show that he personally treated DaSilva for the conditions that she contends preclude her from working, and they do not support the June 19, 2008 assessment. It is sufficient that the ALJ gave specific, clear, and convincing reasons for giving treating neurologist Dr. Puttlitz's diagnoses and opinions controlling weight.

### B. Subjective Symptom Testimony

#### 1. Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).[2] To support a lack of credibility finding, the ALJ is required to point to specific facts in the record that demonstrate that Stewart's symptoms are less severe than she claims. *Id.* at 592. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow

---

[2]Contrary to the Commissioner's contention, *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991), does not permit finding subjective symptom testimony not credible without articulating clear and convincing reasons. The Commissioner correctly quotes *Bunnell* as stating an ALJ must make specific findings, supported by the record, to support his conclusion that a claimant's allegations of severity are not credible. *See id.* at 345. But *Bunnell* does not address whether the reasons must be clear and convincing. Rather, it addresses whether an ALJ may discredit a claimant's allegations of the severity of pain solely on the ground that the allegations are unsupported by objective medical evidence.

a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted).

To be found credible regarding subjective pain or fatigue, a claimant is not required to: (1) produce objective medical evidence of the pain or fatigue itself, or the severity thereof; (2) produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom; or (3) show that his impairment could reasonably be expected to cause the severity of the alleged symptom, only that it could reasonably have caused some degree of the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

### 2. The ALJ Did Not Err by Finding DaSilva's Subjective Symptom Testimony Not Fully Credible.

DaSilva contends that the ALJ erred by failing to set forth specific, clear, and convincing reasons to reject DaSilva's testimony about the severity of her subjective symptoms. In her function report dated June 19, 2006, DaSilva said that she unable to drive, go out alone, or do much because of her constant headaches, dizziness, and nausea. At the October 20, 2008 administrative hearing, DaSilva testified that during the relevant period she had headaches, neck pain, and back pain. She said she had trouble breathing, which caused her not to be able to exert herself. She also said that she would occasionally pass out. She testified that three or four times a week she would be in bed for a couple of hours at a time with headaches during which she needed to avoid light and noise. She did not say that she was unable to sit or perform sedentary work because of neck or back pain. It can be inferred from what she did say that she claimed to be unable to perform sedentary work during the relevant period because of frequent migraine headaches and possibly because of seizures.

Medical records for the relevant period are sparse. DaSilva testified that she quit her job in March 2001 to go to Portugal to care for family members who were ill. Her opening brief asserts that she was treated in Portugal for portions of the period from 2001

- 11 -

to 2005.  Although she bears the burden of proof, *see Tackett*, 180 F.3d at 1098, the only medical records she has identified after January 2, 2003, and before December 31, 2005, that show she reported headaches to any medical providers are those of Dr. Novakovic from July and August 2003.  As discussed above, those treatment notes do not show that she reported headaches so frequent and severe that she needed to stay in bed several days a week for a couple of hours at a time.  Nor do they show an impairment that lasted more than 12 months.

> The administrative hearing decision states:
>
> The claimant alleges that she has been unable to work in any capacity since January 2, 2003 due to her impairments, limitations, and symptoms, but the evidence of record does not support her allegations.
>
> No treating or examining source imposed limitations on the claimant's residual functional capacity which prevented her from performing her past relevant work prior to the date she was last insured, which diminishes her credibility.
>
> . . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credited to the extent they are inconsistent with the above residual functional capacity assessment as of December 31, 2005.

Although records for 2003-2005 were sparse, the ALJ specifically considered Dr. Puttlitz's 2007 clinical records, concluding with his diagnoses:  "lumbar strain, lumbago with low back pain, lumbar postlaminectomy syndrome, cervical and lumbar radiculitis, cervical disk disorder, cervical disk protrusion, cervical spondylosis with facet syndrome, and a headache." But Dr. Puttlitz observed "no apparent distress" and that DaSilva had no difficulty walking.

Thus, the ALJ provided specific, clear, and convincing reasons for rejecting DaSilva's testimony about the severity of his symptoms.

### C. Residual Functional Capacity

DaSilva contends the ALJ's residual functional capacity assessment does not meet legal standards because it includes the term "sedentary." The use of the term "sedentary" here does not violate legal standards because it is coupled with function-by-function assessment.

A claimant's residual functional capacity is "what an individual can still do despite his or her limitations." Social Security Ruling 96-8p. The residual functional capacity determination is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* The hearing decision states:

> [T]he claimant had the residual functional capacity to perform sedentary semi-skilled work with a prohibition on crawling, crouching, climbing, squatting, or kneeling, and prohibitions on the use of her lower extremities for pushing or pulling, and on the use of her upper extremities for work above her shoulder level.

The definition of sedentary work includes some functional limitations:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The ALJ specified functional limitations in addition to those stated in the definition. It was not necessary for him to repeat those stated in the definition.

DaSilva also contends the ALJ erred by failing to impose limitations based on her severe headaches and by failing to assess their frequency, duration, and severity. But DaSilva bore the burden of proving the frequency, duration, and severity of her headaches during the relevant period, and she did not. "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

- 13 -

### D.     Res Judicata and Supplemental Security Income Claim

During the October 20, 2008 hearing, DaSilva's counsel requested that her prior application be reopened. The ALJ asked the counsel to address in post-hearing briefing "whether the claimant's second application for Supplemental Security Income Benefits, which she filed on May 1, 2005, and her Title II application, dated July 10, 2007, with a protective filing date of April 24, 2006, are barred by *res judicata*." DaSilva's counsel submitted a "Post Hearing Brief and Submission" dated October 28, 2008. In the brief, and here, DaSilva contends that (1) under 20 C.F.R. § 404.957(c)(1), *res judicata* does not apply because there was no previous agency determination; (2) the initial adverse decision did not become final under 42 U.S.C. § 405(h) (2006) because there was no hearing; and (3) the ALJ confused the reopening rules with *res judicata*. The post-hearing brief does not explicitly address application of *res judicata* to the May 1, 2005 application for supplemental security income benefits.

Application of *res judicata* is not restricted by 42 U.S.C. § 405(h) to determinations made without a hearing:

> (h)  Finality of Commissioner's decision
>
> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such a hearing. No findings of fact or decision of the Commissioner of social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. . . .

This provision merely requires compliance with statutory procedures for review of post-hearing decisions. It does not refer to decisions made without hearing nor exclude them from application of *res judicata*. *See* 20 C.F.R. § 404.987(a) ("Generally, if you . . . do not request review within the stated time period, you lose your right to further review and that determination or decision becomes final.").

An ALJ may dismiss a request for a hearing if he decides "there is cause to dismiss a hearing request entirely or to refuse to consider any one or more of the issues because – (1) The doctrine of res judicata applies in that we have made a previous determination or

- 14 -

1 decision under this subpart about your rights on the same facts and on the same issue or
2 issues, and this previous determination or decision has become final by either
3 administrative or judicial action." 20 C.F.R. § 404.957(c)(1).  Section 404.987(a)
4 provides that if a claimant fails to request review of a determination or decision in the
5 administrative review process within the stated time period, the claimant generally loses
6 his or her right to further review and that determination or decision becomes final.
7 DaSilva's June 15, 2003 application for disability insurance benefits was initially denied
8 on October 7, 2003, and that decision became final without hearing because she did not
9 request further review.

10 Section 404.987(b) provides that the Commissioner may reopen a final
11 determination or decision under conditions stated in § 404.988, *i.e.*, "within 12 months of
12 the date of the notice of the initial determination, for any reason," and "within four years
13 of the date of the initial determination if we find good cause, as defined in § 404.989, to
14 reopen the case."  "Good cause" under § 404.989 includes "new and material evidence is
15 furnished."  DaSilva contends that new and material evidence has been submitted that
16 shows:

> headaches, dizziness, low back pain, pelvic pain, endometriosis, varicose veins, cerumen – right ear, abdominal pain, hypertension, an MRI of the lumbar spine showing severe degenerative endplate changes are seen at L4-5 with severe narrowing of the disc interspace; and severe narrowing at L4-5 and mild narrowing at L3-4 and L5-S1; and lupus.

20 Most of the additional evidence does not provide new information, and any new
21 information is not material to her ability to perform sedentary work.  The ALJ concluded,
22 and the Court agrees, the additional medical records do not show any "new and material"
23 evidence in support of her request to reopen her 2003 application as contemplated by 20
24 C.F.R. § 404.987 *et seq.*

25 DaSilva also contends that the ALJ erred by not adjudicating her claim for
26 supplemental security income benefits under Title XVI of the Social Security Act, and the
27 ALJ should have considered all of the evidence to adjudicate that claim, not just the

- 15 -

1  evidence through December 31, 2005, the last date insured. However, the ALJ
2  determined that DaSilva's prior application should not be reopened and was barred by *res*
3  *judicata* for the reasons discussed above.
4  Moreover, at the October 20, 2008 hearing, the ALJ expressly stated that this was
5  a hearing "for a period of disability and disability insurance benefits pursuant to the
6  provisions of Title II of the Social Security Act as amended." He further stated: "In this
7  case the alleged onset date of disability is January 2, of 2003. . . . And since this is a
8  Title II claim for disability insurance benefits that's the important date." DaSilva's
9  attorney said "we are seeking to reopen a prior application," but said nothing about this
10 hearing applying to a current Title XVI claim.
11 Finally, none of the medical records regarding DaSilva's condition after December
12 31, 2005, supports finding that DaSilva was not able to perform sedentary work.
13 IT IS THEREFORE ORDERED affirming the final decision of the Commissioner
14 of Social Security denying Diane DaSilva disability benefits.
15 IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant
16 against Plaintiff and that Plaintiff take nothing. The Clerk shall terminate this action.
17 DATED this 14th day of February, 2012.

_____
Neil V. Wake
United States District Judge

- 16 -